1
2
3
4
5
6                    UNITED STATES DISTRICT COURT

7                         DISTRICT OF ARIZONA

8

9    Ajay Kumar,
                                            CIV  05-4161-PHX-DGC-(BPV)
10              Petitioner,
                                            **REPORT AND
11        v.                                 RECOMMENDATION**

12   Phillip Crawford,

13              Respondent.

14
         On December 20, 2005, Ajay Kumar, ("Petitioner"), currently in the custody of the
15
     Immigration and Naturalization Service ("Service") and confined in the Immigration Service
16
     Processing Center in Florence, Arizona, filed a Petition for Writ of Habeas Corpus by A Person
17
     in Federal Custody ("Petition"), pursuant to Title 28, U.S.C. § 2241.   Respondent filed a
18
     Response to the Petition for Habeas Corpus on April 7, 2006, with Exhibits 1 through 11
19
     attached.  A corrected response ("Response") was filed on June 12, 2006.
20
         Pursuant to the Rules of Practice of this Court, on February 15, 2006, this matter was
21
     referred to Magistrate Judge Bernardo P. Velasco for a Report and Recommendation.  The
22
     Magistrate Judge recommends the District Court, after its independent review of the record,
23
     enter an order denying Petitioner's Petition for Writ of Habeas Corpus.
24
25
26
27
28

1  **FACTUAL AND PROCEDURAL BACKGROUND**

2     Petitioner is a citizen and native of India.  (Ex. 1, p.1)[1]   Petitioner arrived in the United

3  States through Chicago O'Hare International Airport on March 20, 2001.  (*Id.*)   Petitioner

4  presented with no entry documents, but claimed a fear of returning to India.  (Id., Ex. 2, p.2-6)

5  Following an interview, the asylum officer determined that Petitioner had established a credible

6  fear of persecution.  (Ex. 2, p.5.)

7     On March 22, 2001, notice was issued to Petitioner directing him to appear before an

8  Immigration Judge and charging Petitioner with removability under § 212(a)(7)(7)(A)(i)(I) of

9  the Immigration and Nationality Act ("INA"), as an immigrant who, at the time of application

10 for admission , is not in possession of a valid entry document, and § 212(a)(6)(C)(i) of the INA

11 as an immigrant who, by fraud or wilful misrepresentation, seeks to procure a visa, other

12 documentation, or admission into the United States, or other benefits provided under the INA.

13 (Ex. 3, p. 7-8)

14    Petitioner was released on parole on April 6, 2001.  (Ex. 4.)   After failing to attend his

15 removal hearing on July 25, 2002, Petitioner was ordered removed in absentia.  (Ex. 5.)

16    Nearly three years later, Petitioner was arrested at a bus station on July 16, 2005, and

17 taken into DHS custody.  (Ex. 6.)  Deportation Officer Tracy Miranda-Binkley states in an

18 affidavit that she requested Petitioner's assistance in completing the Indian travel document

19 travel application in order for the Embassy Consular officer to issue a travel document for him,

20 but that Petitioner responded by stating he would not fill out any paperwork until after he spoke

21 with his attorney.  (Ex. 8.)  Miranda-Binkley states that Petitioner did fill out the forms, but left

22 several items blank or incomplete.  (Ex. 8.)

23    DHS requested removal documents from the Indian Embassy on August 23, 2005.  (Ex.

24 7.)

25

26    [1]   All exhibit numbers in this Report and Recommendation are references
        to exhibit numbers in the exhibits attached to Respondents' " Response
27      in Opposition to Petition for Writ of Habeas Corpus."

28                                          2

1          On October 27, 2005, DHS issued Petitioner a Decision to Continue Detention, informing

2   Petitioner that his custody status had been reviewed, and it had been determined that he would

3   not be released from custody at that time.  (Ex. 9.)  The decision was based on the Petitioner's

4   failure to provide supporting verification that he would have a place of residence, a place of

5   employment, nor any financial support if he were to be released from the Bureau of Immigration

6   and Customs Enforcement's ("ICE's") custody.  (Ex. 9, p. 1.)  Additionally, DHS noted that

7   Petitioner had failed to provide evidence that he had made efforts to assist ICE in pursuing the

8   issuance of travel documents.  (*Id*.)

9          On February 7, 2006, DHS again issued Petitioner a Decision to Continue Detention.

10  (Ex. 10.)   The decision was based on a review of Petitioner's file record and/or personal

11  interview and consideration of any information submitted to ICE reviewing officials. (*Id*.) DO

12  John Schultz submitted an affidavit indicating that, pursuant to an agreement reached between

13  ICE representatives and  representatives of India's Ministry of External Affairs, it would be

14  possible to obtain travel documents in instances where a passport number was available,

15  provided the passport had been issued after 1995.  (*See* Ex. 11.)

16         DO Schultz stated in his affidavit that, on April 6, 2006, when he attempted to check

17  Petitioner's passport number, the system to check the passport number was not working, but was

18  expected to be functional in one-weeks time.  (*Id*.)  In the absence of verification by passport

19  number, which would be immediate, it might still be possible to prepare travel document

20  presentations, as presently done by the United Kingdom, which resulted in an issue rate of 60%

21  and took approximately 90 days from the date of submission to accomplish. (*Id*.)  Additionally,

22  travel documents could issue in as little as a week if a copy of an Indian driver's license or a

23  copy of an Indian election card are presented.  (*Id*.)

24         On December 20, 2005, the Petitioner filed a Petition for Writ of Habeas Corpus with this

25  Court.  Respondents submitted a deficient Response to the Petition on April 7, 2006 and a

26  corrected Response to the Petition with Exhibits 1-11 attached on June 12, 2006.

27

28                                                 3

1          Petitioner filed this petition on December 20, 2005, alleging that despite receiving a final

2  removal order on July 16, 2005, his removal cannot be effected and that this is unlawful

3  indefinite detention, contrary to the Supreme Court's holding in *Zadvydas v. Davis*, 533 U.S. 678

4  (2001), because INS has exceeded the permissible detention period pending his removal to India.

5  Petitioner alleges that as of the date the instant petition was filed, he had been detained pending

6  removal for longer than six months, the period deemed presumptively reasonable by the United

7  States Supreme Court.

8                                          **DISCUSSION**

9          The federal habeas corpus statute, 28 U.S.C. § 2241 confers jurisdiction upon the federal

10  courts to hear cases involving statutory and constitutional challenges to post-removal-period

11  detention. *Zadyvydas v. Davis*, 533 U.S. 678, 682 (2001).

12          When a final order of removal has been entered, the Government ordinarily secures the

13  alien's removal during a subsequent 90-day statutory removal period. *See* 8 U.S.C. §

14  1231(a)(1)(A) (1996). However, further detention is authorized: "An alien ordered removed ...

15  [pursuant to certain sections] ... may be detained beyond the removal period..." *See* 8 U.S.C.

16  § 1231(a)(6) (1994).

17          Thus, detention for more than 90 days pending removal is clearly authorized, without

18  statutory limit as to how long the alien may be detained. However, as discussed below, case law

19  finds implicit constitutional limits in certain circumstances.     Interpreting 8 U.S.C. §1231(a)(6),

20  the U. S. Supreme Court concluded that six months is a "presumptively reasonable" period of

21  detention pending removal. *Zadvydas v. Davis*, 533 U.S. 678, 701, 121 S.Ct. 2491, 2505, 150

22  L.Ed.2d 653 (2001). The Court held that indefinite detention is unconstitutional; after six

23  months, the government's authority to continue the detention depends on whether there is a

24  "significant likelihood of removal in the reasonably foreseeable future." *Id*.

25          Petitioner's final order of removal was issued on July 25, 2002, however, he was not

26  detained on the order until July 16, 2005.  He has been detained nearly fourteen months,

27  considerably longer than the six months the Supreme Court found presumptively reasonable in

28  *Zadvydas*.

1    The burden then shifts to the government, which must respond with evidence sufficient

2    to rebut Petitioner's showing. *Zadvydas*, 533 U.S. at 701, 121 S.Ct. at 2505.

3    *Is there a significant likelihood of removal?*

4    As of April 6, 2006, the affidavit submitted by DO Schultz indicated a strong likelihood

5    that DHS would obtain travel documents for Petitioner within the next 90 days.  As of the time

6    of this Report and Recommendation, however, there is no indication that DHS has done so, and

7    thus, the Magistrate Judge finds that, absent a showing by Respondent contrary to this Report,

8    there is no significant likelihood of removal in the reasonably foreseeable future.  More than

9    enough time has elapsed for verification by passport number, Indian drivers license or election

10   card, or, alternatively, presentation to through the pilot program with the Ministry of External

11   Affairs via the U.S. Embassy in Delhi.   Under the circumstances, continued detention of

12   Petitioner is unreasonable and no longer authorized by statute.

13   *Does Petitioner's refusal to cooperate in obtaining travel documents justify his continued*

14   *detention?*

15   Respondent contends that Petitioners continued detention is justified because Petitioner

16   has refused to cooperate in obtaining documents for his removal, and is, in fact thwarting those

17   efforts.

18   Pursuant to statute, the detention period may be extended beyond a period of 90 days "and

19   the alien may remain in detention during such extended period if the alien fails or refuses to

20   make timely application in good faith for travel or other documents necessary to the alien's

21   departure or conspires or acts to prevent the alien's removal subject to an order of removal."

22   8 U.S.C. § 1231 (a)(1)(C).

23   In *Pelich v. I.N.S.*, 329 F.3d 1057 (9th Cir. 2003), the Ninth Circuit refused to place the

24   petitioner in that case into "the confines of *Zadvydas*" because, unlike the detainees in *Zadvydas*,

25   petitioner "was responsible for his plight," having steadfastly refused to fill out a Polish passport

26   application, which directly impedes Poland's ability to determine whether the petitioner qualified

27   for Polish travel documents; providing INS with conflicting information regarding his name, his

28   parent's names, his parents' birthplaces and residences, his birthplace and his nationality; in

1   essence, the petitioner had the "keys to freedom in his pocket."  *Pelich*, 329 F.3d at 1059-60

2   (citations omitted).  The Ninth Circuit concluded that *"Zadvydas* does not save an alien who fails

3   to provide requested documentation to effectuate his removal.  The reason is self-evident: the

4   detainee cannot convincingly argue that there is no significant likelihood of removal in the

5   reasonably foreseeable future if the detainee controls the clock."  *Id.* at 1060.

6        It is not clear in this instance exactly how Petitioner is refusing to cooperate in his

7   removal.  Respondent's Exhibit 7 appears to be a form wherein Petitioner claims that his passport

8   has been lost, that he does not remember the date of issuance, that he does not remember the

9   exact date of loss or circumstances under which it was lost.  Petitioner has signed the form, and

10  there is no indication by Respondent that they have reason to believe the answers are untruthful.

11  (Ex. 7.)  Although initially, Petitioner expressed reluctance to fill out the paperwork until after

12  he had spoken with his attorney, it appears that he in fact filled out the form and signed it within

13  three weeks of the initial request to do so.  (Ex. 7, 8.)

14       DO Miranda-Binkley states in her affidavit that, since the date of August 23, 2005, Mr,

15  Kumar has not provided our office with any additional information or documents that would aid

16  in proving his citizenship in order to assist in obtaining a travel document from the Embassy of

17  India. (Ex.8.)

18       There is no statement in the Affidavit that would support an assertion that Respondent

19  has reason to believe that Petitioner is lying about his statements concerning his passport, other

20  than he knows what his passport number is, which could have been taken off of other documents,

21  or that Respondent has reason to believe that Petitioner is able but unwilling to provide the office

22  with additional information or documents and what these additional information or documents

23  might in fact be.  (Ex. 8.)  Petitioner may simply be unable to provide DHS with further

24  information.  Respondent has not demonstrated that Petitioner has done anything other than

25  cautiously consult with his attorney and, perhaps not so cautiously, lose his passport.

26       The Decision to Continue Detention, issued on February 7, 2006, however, indicated that

27  Petitioner was advised that copies that could verify Petitioner's identity, citizenship, and/or

28  nationality such as a birth certificate and or passport would be needed from petitioner or his

1   family.  (Ex. 10.)  There is no indication that Petitioner cooperated in obtaining these documents

2   or other documents that would verify his identity, citizenship or nationality.  Furthermore, the

3   Petitioner does not assert in his Petition that he has cooperated with officials to secure travel

4   documents, and, therefore, Petitioner cannot meet his burden to show there is no significant

5   likelihood of removal in the reasonably foreseeable future and continued detention is proper

6   under 8 U.S.C. § 1231 (a)(1)(C).  *See Lema v. I.N.S.*, 341 F.3d 853, 857.

7           Accordingly, the Magistrate Judge recommends that the District Court enter an order

8   denying Petitioner's Petition.

9                                                    **RECOMMENDATION**

10          For all of the above reasons, **THE MAGISTRATE JUDGE RECOMMENDS** that the

11  District Court, after its independent review, issue an Order **DENYING** Petitioner's Petition for

12  Writ of Habeas Corpus filed December 20, 2005.

13          Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections with the

14  District Court within ten days of being served with a copy of this Report and Recommendation.

15  If the objections are not timely filed they may be deemed waived. If any objections are filed, this

16  action should be designated with the following case number: **CV 05-04161-PHX-DGC**.

17          DATED this 12th day of September, 2006.

18

19

20

21                                          Bernardo P. Velasco
                                            United States Magistrate Judge

22

23

24

25

26

27

28